**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)**

| | | |
|---|---|---|
| **DWIGHT D. MITCHELL** | * | Collective/Class Action Claims |
| 2317 Kaywood Lane | * | |
| Silver Spring, Maryland 20905 | * | |
| *Resident of Montgomery County* | * | |
| | * | |
| ***Individually and On Behalf of Other*** | * | |
| ***Similarly Situated Employees*** | * | <u>Jury Trial Requested</u> |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| **FEDERAL EXPRESS CORPORATION** | * | Civil Action No.: |
| 942 S. Shady Grove Road | * | |
| Memphis, Tennessee 38120 | * | |
| | * | |
| Serve: The Corporation Trust Incorporated | * | |
| 351 W. Camden Street | * | |
| Baltimore, Maryland 21201 | * | |
| | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## <u>CLASS AND COLLECTIVE ACTION COMPLAINT FOR WAGES OWED</u>

DWIGHT D. MITCHELL, Plaintiff, by and through his undersigned counsel and The Law Offices of Peter T. Nicholl, hereby submits his Complaint against FEDERAL EXPRESS CORPORATION, Defendant, to recover unpaid wages, liquidated damages, interest, reasonable attorneys' fees and costs under Section 16(b) of the Federal Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201, *et seq*. (hereinafter, "FLSA") and unpaid wages, liquidated damages, interest, reasonable attorneys' fees and costs under Maryland Wage and Hour Law, Maryland Code Annotated, Labor and Employment Article §§ 3-401 *et seq*. (hereinafter, "MWHL"), and in support thereof, states as follows:

## INTRODUCTION AND BACKGROUND

This matter stems from the application of a common scheme devised by Defendant, Federal Express Corporation (hereinafter, "FedEx") to avoid paying Plaintiff all his wages owed. FedEx is an international organization operating in the air courier service industry with its principal office located in Memphis, Tennessee. FedEx is registered to do business in Maryland and, upon information and belief, registered to do business in all of the states in the Continental United States.

Defendant initially hired Plaintiff to work as a "Security Specialist III" (hereinafter, "Specialist"). He was eventually promoted to "Senior Security Specialist" (hereinafter, "Senior Specialist"). When hired as a Specialist, Plaintiff was instructed that he was to develop safety measures and protocols, develop safety awareness programs, act as a liaison between local, state, and federal law enforcement, developing relationships with emergency call centers and being prepared to deploy when needed, participating in sales calls to minimize package theft, as well as other duties as discussed herein.[1] However, Plaintiff's actual duties, as both a Specialist and a Senior Specialist were more than those of a regular security guard but not sufficient to exempt the position from the FLSA overtime requirements  As discussed herein, Plaintiff was reduced to a reactive role, rather than the proactive role described in the duties discussed above. Plaintiff was primarily charged with investigating employee violence and theft, as well as other instances of theft, pilfering, vandalism and similar occurrences.

Because of the multiple areas Plaintiff was assigned to cover, Plaintiff consistently worked, and continues to work, far in excess of forty (40) hours per week. However, Defendant has failed, and continues to fail altogether to compensate Plaintiff for his overtime hours.

---

[1] *See infra* ¶ 22.

Defendant has completed, and is still able to complete, these illegal acts by paying Plaintiff under the guise of a salary as a supposed "exempt employee." However, Plaintiff's duties and position do not exempt him from the overtime requirements of the FLSA and MWHL. Defendant willfully and intentionally misclassified Plaintiff as a salaried employee for the sole purpose of avoiding overtime compensation for all hours worked over forty (40) per week.

Through these unlawful acts, Defendant evaded the payment of overtime wages owed to Plaintiff and other similarly situated employees pursuant to the standards set forth by the FLSA, and MWHL. Upon information and belief, Defendant is currently engaged in this unlawful activity.

## THE PARTIES

1. Plaintiff, DWIGHT D. MITCHELL (hereinafter, "Mitchell" or "Plaintiff") is an adult resident of Montgomery County, Maryland.

2. Defendant, FEDERAL EXPRESS CORPORATION (hereinafter "FedEx" or "Defendant") is an international organization in the air courier service industry. Defendant's principal office is located in Memphis, Tennessee. Defendant operates several divisions nationwide and worldwide including FedEx Ground, FedEx Express, and FedEx Freight, and is registered to do business in every state in the United States, including Maryland.

3. Defendant is subject to the FLSA and MWHL due to the amount of annual revenues generated; Defendant's annual dollar volume of business exceeds five hundred thousand dollars ($500,000.00).

4. At all times relevant to this Complaint, Plaintiff engaged in interstate commerce by the nature of the duties he performed as part of his employment with Defendant.

5. Plaintiff worked for Defendant, who, at all times throughout Plaintiff's employment, fell within the definition of the term "employer" under the FLSA, 29 U.S.C. § 203(d) and MWHL, § 3-401(b).

6. While working as a Specialist and subsequently as a Senior Specialist for Defendant, Plaintiff Mitchell and other similarly situated employees should have, at all times, been classified and paid as non-exempt employees under the FLSA and the MWHL.

7. From approximately 2006 to present, Plaintiff Mitchell has been employed with Defendant.

8. At all times relevant to this Complaint, Defendant and/or its agents controlled the administration of their business and set employee schedules, including the schedule of Plaintiff and the schedules of other similarly situated employees.

9. Defendant was actively engaged in the management and direction of Plaintiff and other similarly situated employees.

10. Defendant controlled and supervised the work that Plaintiff and other similarly situated employees performed.

11. Defendant and/or its agents, particularly the security zone manager, would meet with Plaintiff during the year to ensure that policy and practices developed by management were understood and being followed.

12. Defendant possessed and exercised the authority to determine the hours worked by Plaintiff and other similarly situated employees.

13. Defendant had the authority to control Plaintiff's tasks and the tasks of others similarly situated employees.

14. Defendant had the power and authority to change the course of Plaintiff's duties and the duties of other similarly situated employees.

15. Defendant made all decisions relating to Plaintiff's rate and method of pay.

16. Plaintiff and members of the putative classes recognized Defendant's authority and obeyed Defendant's instructions.

## JURISDICTION AND VENUE

17. Original jurisdiction in this Honorable Court is expressly provided by FLSA, 29 U.S.C. § 207, *et seq*. This Court also has subject matter jurisdiction under 28 U.S.C. § 1331.

18. Discretionary supplemental jurisdiction of Plaintiff's Maryland state law claim is provided by 28 U.S.C. § 1367 (a); the state law claim forms part of the same case or controversy and derives from the same common nucleus of operative facts on which Plaintiff's federal claims are based. Furthermore, no reasons exist that would force this Honorable Court to decline jurisdiction; the state law claims (i) do not raise novel or complex issues of state law, (ii) do not substantially predominate the claims over which this Honorable Court has original jurisdiction, and (iii) no exceptional circumstances exist that would constitute a compelling reason for declining jurisdiction, thereby satisfying 28 U.S.C. 1367 (c).

19. Pursuant to 28 U.S.C. § 1391 (b), venue is appropriate as most if not all of the unlawful acts central to this matter occurred within the State of Maryland.

## FACTUAL ALLEGATIONS FOR ALL CLAIMS

*Employment*

20. In approximately 2006, Defendant hired Plaintiff Mitchell to work as a Security Specialist III (hereinafter, "Specialist"). In approximately November of 2008, Plaintiff was promoted to Senior Security Specialist (hereinafter, "Senior Specialist").

21. Plaintiff was originally assigned to the home delivery facility in Beltsville, Maryland and later transferred to the ground facility of Defendant in Beltsville, Maryland. During the course of his employment, he has rotated through Defendant's facilities in Waldorf, Salisbury and Baltimore. For the past few years Plaintiff has covered facilities in Crofton, Gaithersburg and Upper Marlboro, Maryland.

### *Specialist Duties*

22. Plaintiff's job description as noted in his initial hiring documentation, was as follows:

   a. Developing and implementing security awareness programs;

   b. Developing and implementing loss prevention programs, supporting initiatives by management to manage expenses within assigned areas of responsibility as needed;

   c. Providing matrix support to various levels of management;

   d. Conducting investigations into thefts, pilferages, workplace violence, acts of vandalism, misconduct and other activities detrimental to the FedEx brand, its employees and its customers;

   e. Developing and maintaining liaison with local, state and federal law enforcement agencies;

   f. Providing for the protection of senior management as specified in the executive protection program as required;

   g. Performing security assessments and producing any corrective action plans required to maintain the security standards, conducting facility and aircraft ramp inspection as required;

    h. Participating in joint sales calls to minimize package lost/theft, proposing solutions and implementing preventive measures;

    i. Maintaining security case load and updating security information management systems;

    j. Conducting audio recorded interviews and maintaining files;

    k. Developing relationships with emergency command centers and being prepared to deploy in emergency situations;

    l. Ensuring compliance with regulatory items, document and identify screening of shipments and implement corrective action plans using quality tools as required; and

    m. Other duties as assigned.

23. Plaintiff was ostensibly hired to perform the above-referenced tasks, which constituted the position description of "Security Specialist III" as described in Plaintiff's initial hiring documentation. However, Plaintiff's actual duties varied/vary in some respects from the list described above.

24. The majority of Plaintiff's work revolved around servicing and maintaining the safety and security needs of employees, customers and assets. This primarily entailed investigating and implementing corrective action plans regarding workplace violence and theft, as well as investigating and attempting to resolve pilferages, acts of vandalism, misconduct, security policy violations and other activities detrimental to the FedEx brand.

*Senior Specialist Duties*

25. From 2008 to present, Plaintiff performed, and continues to perform, the same duties noted in paragraph 24, with the added duties of handling customer complaints and investigating problems with deliveries.

26. Plaintiff has not, nor does he currently, supervise any employees as a Senior Specialist.

27. Plaintiff Mitchell has had little to no discretion in the manner in which he is to perform his assigned tasks. These are the same tasks that are assigned to and performed by the other Senior Specialists in his workgroup.

28. Defendant and its executives/managers make all major decisions concerning the manner in which Plaintiff and other Specialists and Senior Specialists are to perform their duties, as well as all policies and procedures that are related thereto.

29. Plaintiff's immediate supervisor is Jaime Phair, who is a Zone Manager.

30. Plaintiff did not and still does not have the authority to hire or fire other employees, nor has he ever possessed or exercised such authority.

31. Plaintiff did not and still does not have any input or discretion in regard to any of the employment terms and conditions of Defendant's employees, including the other Specialists and Senior Specialists.

32. Plaintiff did not and still does not perform work that is in any way related to Defendant's management policies or general business operations.

33. Plaintiff's duties did not and still do not affect the structure of Defendant's business, substantially or otherwise.

34. Plaintiff had no effect and still has no effect, substantial or otherwise, on the administrative operation of Defendant's business.

35. Plaintiff only performed and continues to perform work related to the safe delivery of all products shipped, Defendant's primary product.

36. Plaintiff Mitchell did not and still does not perform the following duties noted in paragraph 22:

   a. Developing security awareness programs;

   b. Developing loss prevention programs, supporting initiatives by management to manage expenses within assigned areas of responsibility as needed;

37. Plaintiff Mitchell at all times satisfied, and continues to satisfy, the requirements of his job and adequately performs his duties to benefit Defendant.

*Wages*

38. For the aforementioned work as a Security Specialist, III from approximately November 2006 to November 2008, Plaintiff Mitchell received annual salaries ranging from approximately sixty-six thousand dollars ($66,000.00) to approximately seventy-one thousand dollars ($71,000.00).

39. For the aforementioned work as a Senior Security Specialist, from approximately December 2008 to September 2014, Plaintiff received annual salaries ranging from approximately seventy-three thousand dollars ($73,000.00) to approximately seventy-six thousand ($76,000.00).

40. For the aforementioned work as a Senior Security Specialist, from approximately October 2014 to September 2015, Plaintiff received an annual salary of approximately seventy-eight thousand ($78,000.00).

41.     For the aforementioned work as a Senior Security Specialist, from approximately October 2015 to present, Plaintiff received/receives an annual salary of approximately eighty thousand dollars ($80,000.00).  Plaintiff currently receives semi-monthly gross payments of three thousand, three hundred and forty eight dollars ($3,348.00).

***Overtime***

42.     Regardless of how many hours Plaintiff and other similarly situated employees worked, they did not receive any additional wages outside of their prescribed salaries.  This is true for both Specialists and Senior Specialists.  This has been the case for the entirety of Plaintiff's tenure with Defendant.

43.     During most pay periods, Plaintiff and other similarly situated employees consistently worked, and continue to work, well over forty (40) hours per week.

44.     Plaintiff's normal work schedule is from 5:00 a.m. or 5:30 a.m. to 1:00 p.m. or 1:30 p.m., Monday through Friday.

45.     However, due to the nature of his job, Plaintiff is also on-call sixteen (16) hours a day on weekdays and twenty-four (24) hours a day on weekends.  When on-call, Plaintiff is required to answer any call.  The same is true for other Specialists and Senior Specialists, regardless of what warehouse or office they are assigned to.

46.     When on-call, Plaintiff is strictly regulated.  Plaintiff is required to remain within a small limited geographical area at all times.  In the event that he is needed at one of the offices he services he needs to be available on short notice.  Furthermore, Plaintiff is prohibited from drinking alcohol when on-call, as he is required to be sober in order to take action to resolve any security or safety problem immediately upon receiving a call.

47.     After working his assigned daily schedule, Plaintiff would regularly continue to work from home.  Plaintiff would constantly receive calls regarding security and safety issues, both on weekdays and weekends.  These calls could come in at any time after or before Plaintiff's scheduled shifts.  Plaintiff is required to work on resolving the issue/problem over the phone whenever such a problem arose.  Additionally, about once or twice a month, Plaintiff would be required to return to the office long after his scheduled shift had ended, to resolve security issues whatever they may be.

48.     Plaintiff would receive a two (2) to three (3) of these calls per day after his shift ended.  The amount of time each call would take varied significantly depending on the problem, ranging anywhere from five (5) minutes from beginning to end, to a few hours.  Plaintiff is obliged to accept these calls, no matter what time they come in.  This contributes substantially to the amount of overtime hours Plaintiff and other Specialists and Senior Specialists work.

49.     The circumstances above resulted in Plaintiff and other similarly situated employees consistently working as many fifty (50) to sixty (60) hours per week.

50.     Regardless of how many hours he worked, Plaintiff did not receive and still does not receive any overtime wages for hours worked over forty (40) in a workweek.  Plaintiff received/receives only his regular salary.

51.     Defendant FedEx has a standby/on-call policy, which provides compensatory time off for employees who are required to be on-call for critical business purposes, either for days they are not scheduled to work or for time before or after the completion of their regularly assigned shift. One hour of compensatory time is granted for every eight (8) duty hours.  Per this policy, in the event that compensatory time could not be scheduled because of business demands,

employees are to receive a lump sum payment for the compensatory time with the approval of a manager.

52. Plaintiff would occasionally receive some compensatory time, however, Plaintiff was required to be on-call during that time. The only time that Plaintiff was not required to be on-call is when he would take a sick day or when he was on approved vacation.

53. Plaintiff has never received a lump sum for the compensatory time he has earned for his constant on-call time.

54. Defendant paid Plaintiff and others similarly situated a salary and offered compensatory time in order to evade both Federal and Maryland wage laws requiring non-exempt employees like Plaintiff and others similarly situated to receive overtime pay for all hours worked over forty (40) in a workweek.

55. There is no bona fide dispute that Plaintiff and others similarly situated are owed overtime wages for hours worked over forty (40) in a workweek. At no time did Plaintiff's duties, or those of other similarly situated employees, actually include work that would make them exempt from the FLSA and MWHL provisions requiring that they be paid overtime wages.

56. Defendant and/or its agents were well aware of the overtime hours Plaintiff and other similarly situated employees were regularly required to work yet made no effort to pay the overtime premium.

57. Defendant and/or its agents were actively engaged in the scheduling, management and direction of Plaintiff and other similarly situated employees.

58. Defendant and/or its agents controlled and supervised the work performed by Plaintiff and other similarly situated employees and suffered or permitted them to work more than forty (40) hours a week.

59. In bad faith, Defendant withheld and continues to withhold overtime wages owed to Plaintiff and other similarly situated employees

60. Thus, Plaintiff seeks his wages owed and other available relief through this Complaint.

### FLSA COLLECTIVE ACTION ALLEGATIONS

61. Plaintiff and other similarly situated employees work as "Security Specialist IIIs" and "Senior Security Specialists" for Defendant.

62. The FLSA requires employers to compensate non-exempt employees such as Plaintiff and other similarly situated employees overtime wages for all hours worked over forty (40) within a single workweek.

63. Defendant knows that Plaintiff and other similarly situated employees typically and customarily work well over forty (40) hours per week and suffered or permitted Plaintiff and other similarly situated employees to work more than forty (40) hours per week without compensation for the overtime.

64. Defendant knows or should have known that Plaintiff and those similarly situated are entitled to overtime wages for all hours worked over forty (40) in a single workweek.

65. Pursuant to the FLSA, Plaintiff commences this collective action against Defendant on behalf of himself and those similarly situated for the payment of wages owed reflecting an overtime rate of not less than one and a half (1.5) times their regular rates of pay.

66. Plaintiff consents to be party plaintiff in this matter; Plaintiff's consent form is attached to this complaint as Exhibit A.  It is likely that other individuals will join Plaintiff during the litigation of this matter and file written consents to "opt in" to this collective action.

67. There are numerous similarly situated current and former employees of Defendant that have been harmed by Defendant's common scheme to underpay its employees and violate the FLSA.

68. These similarly situated persons are known to Defendant and are readily identifiable through Defendant's records.

69. Many of these similarly situated employees would benefit from the issuance of court-supervised notice, granting them the opportunity to join this lawsuit.

70. Upon information and belief, other similarly situated employees will choose to join Plaintiff in this action against Defendant and opt in to this lawsuit to recover unpaid wages and other available relief.

## CLASS ACTION ALLEGATIONS UNDER MARYLAND WAGE LAWS

71. Plaintiff brings this action Pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and other current and former employees that served as Security Specialist IIIs and Senior Security Specialists (hereinafter "Specialists") for Defendant and were subject to the following practices and policies:

72. Denial of overtime wages under MWHL for hours worked over forty (40) in a single workweek.

73. The class Plaintiff seeks to represent is defined as:

*MWHL Class*

> All individuals who are or were employed by Defendant as Security Specialist IIIs and Senior Security Specialists for any period ranging from September 13, 2013 to the present and who were not paid an overtime rate of time-and-a-half their regular rate for all hours worked over forty (40) in a workweek in violation of MWHL.

74. *Numerosity:* The individuals in the class are so numerous that joinder of all members is impracticable. Although the precise number of such individuals is currently unknown, on information and belief, the class includes hundreds of employees who are readily identifiable through Defendant's pay records. Defendant employs hundreds of Specialists at its various offices and warehouses throughout the nation. Defendant operates hundreds of locations across the United States and services clients throughout the world. Consequently, numerosity exists.

75. *Commonality:* There are questions of law and fact common to the class. Among the common questions of law and fact applicable to Plaintiff and the class are:

   i. Whether the members of the Class are similarly situated because they all performed the same basic duties and were subject to Defendant's common policy and practice of not paying them overtime;

   ii. Whether Defendant employed the Class within the meaning of MWHL;

   iii. Whether Defendant violated MWHL by failing to pay Plaintiff and the Class overtime compensation for hours worked in excess of forty (40) hours per workweek;

   iv. Whether Defendant's violations of MWHL were willful; and

   v. Whether Defendant is liable for damages claimed herein, including but not limited to, compensatory, liquidated or treble, statutory, interest, costs and attorneys' fees.

76. *Typicality:* Plaintiff's claims are typical of those of the Class. Specifically, each and every class member of the Class worked as a Security Specialist III or Senior Security Specialist for Defendant and was assigned to one or more of its warehouses or offices. Each and every Class member was required to work well over forty (40) hours per workweek to keep up

with Defendant's imposed schedule and as a result of regular understaffing, and on-call requirements.  Each class member was paid a salary that remained unchanged, regardless of the amount of hours worked each week.  As a result, each and every class member suffered the same harm.  This was due to Defendant's failure to pay a proper overtime premium for all hours worked in excess of forty (40) hours per workweek.  This constitutes a direct violation of MWHL.

77.     *Adequacy:* Plaintiff will fully and adequately protect the interests of the Class.  He seeks the same recovery as the Class, predicated upon the same violations of the law and the same damage theory.  Plaintiff has also retained counsel who are qualified and experienced in the prosecution of statewide wage and hour class actions.  Neither Plaintiff nor his counsel have interests that are contrary to, or conflicting with, the interests of the class.

78.     *Predominance:* The common issues of law and fact predominate over any individual issues.  Each class member's claim is controlled by Maryland's wage and hour statutory scheme and one set of facts.  This is based on Defendant's failure to pay overtime as required by MWHL.  Similarly, the damages are eminently certifiable in that Defendant's records will provide the amount and frequency each class member was paid.  The amount of time each class member worked is also available through Defendant's records.

79.     This action is maintainable as a class action.  The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class.  This would establish incompatible standards of conduct for Defendant.  If they were to pursue their claims separately, the numerous adjudications that would be required to protect the individual interests of the class members would constitute a drain and burden on judicial resources.  Accordingly, the Court should certify the proposed classes.

## CAUSES OF ACTION AND VIOLATIONS OF LAW

### *Count I.  Violation of the FLSA: Failure to Pay Overtime Wages to Plaintiff and all Members of the Collective Action Who, During The Course of This Matter, Opt-In to the Suit by Submitting their Consent Forms to Become a Party Plaintiff.*

80. Plaintiff hereby fully incorporates in this Count all allegations contained within Plaintiff's Complaint.

81. Plaintiff is entitled to overtime under 29 U.S.C. § 207(a), which provides that employers must compensate their employees for hours worked in excess of forty (40) in a workweek at a rate of not less than one and one-half (1.5) times the regular rate at which they are employed.

82. As described above, Plaintiff has not received from Defendant compensation reflecting the prescribed overtime wage rate for hours worked in excess of forty (40) in a week; Defendant failed to compensate Plaintiff for these additional hours, for which Plaintiff was only paid regular salary.

83. Defendant willfully and intentionally failed to compensate Plaintiff for the overtime hours he worked by unjustifiably paying Plaintiff under the guise of a salary.  There is no bona fide dispute that Plaintiff is owed overtime wages for work performed for Defendant.

84. Under the FLSA, Plaintiff is entitled to additional wages from Defendant to compensate him for hours worked in a workweek in excess of forty (40) at a rate of one and one-half (1.5) times Plaintiff's regular hourly wage rate.

*(Count II. Violation of MWHL: Failure to Pay Overtime Wages to Plaintiff and All Members of the MWHL Class, to be Certified by Motion During the Course of This Matter.*

85. Plaintiff hereby fully incorporates in this Count all allegations contained within Plaintiff's Complaint.

86. Pursuant to Maryland Labor and Employment Code Ann. § 3-415, each employer shall pay an overtime wage of at least one and one half (1.5) times the regular hourly rate.

87. Furthermore, pursuant to Maryland Labor and Employment Code Ann. § 3-420(a), an employer shall compute the wage for overtime under § 3-415 on the basis of each hour over forty (40) that an employee works during one (1) workweek.

88. Plaintiff has not received compensation from Defendant reflecting the prescribed overtime wage rate for hours worked in excess of forty (40) in a week; rather, Defendant unlawfully compensates Plaintiff for all hours by paying him a salary.

89. Defendant willfully and intentionally does not compensate Plaintiff for the overtime hours he works by unjustifiably paying Plaintiff under the guise of a salary. There is no bona fide dispute that Plaintiff is owed overtime wages for the work he performed for Defendant.

90. Under MWHL, Plaintiff is entitled to additional wages from Defendant for all overtime hours worked at a rate of one and one-half (1.5) times Plaintiff's regular hourly wage rate.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and others similarly situated, prays for the following relief:

a) In accordance with 29 U.S.C. § 216(b), designation of this action as a collective action on behalf of Plaintiff and those similarly situated;

b)   In accordance with Rule 23 of the Federal Rules of Civil Procedure, designation of this action as a Maryland state law class action on behalf of Plaintiff and all members of the proposed classes;

c)   Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names, addresses, and emails of all those individuals who are or were similarly situated and permitting Plaintiff to send notice of this action to all those similarly situated individuals;

d)   Designating the named Plaintiff to act as class representatives on behalf of all similarly situated employees for both the FLSA and Maryland state law classes;

e)   Judgment against Defendant for its failure to pay Plaintiff, and those similarly situated, in accordance with the standards set forth by the FLSA;

f)   Judgment against Defendant for its failure to pay Plaintiff, and other members of the MWHL Class, in accordance with the standards set forth by MWHL;

g)   Judgment against Defendant and classifying its conduct as willful, not in good faith, and that it was not the result of a bona fide dispute;

h)   Judgment against Defendant and classifying Plaintiff and the classes as non-exempt employees entitled to protection under the FLSA and MWHL;

i)   An award against Defendant for the amount of unpaid overtime wages owed to Plaintiff and those similarly situated, calculated at a rate that is not less than one and a half (1.5) times Plaintiff and other similarly situated employees' regular hourly rate for all overtime hours worked;

j)   An award of liquidated damages equal to the total amounts of unpaid wages owed to Plaintiff and those similarly situated;

k)   An award of reasonable attorneys' fees and all costs, plus pre-judgment and post-judgment interest, to be satisfied in full by Defendant;

l)   Leave to add additional Plaintiffs by motion, through the filing of written consent forms, or any other method approved by this Honorable Court; and

m)   All further relief deemed just and equitable by this Honorable Court.

## REQUEST FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff requests that a jury of his peers hear and decide all possible claims brought on behalf of Plaintiff and those similarly situated.

Respectfully submitted,

*/s/ George E. Swegman*
George E. Swegman, Esquire (#19444)
gswegman@nicholllaw.com
Benjamin L. Davis, Esquire (#29774)
bdavis@nicholllaw.com
The Law Offices of Peter T. Nicholl
36 South Charles Street, Suite 1700
Baltimore, Maryland 21201
Phone No.: (410) 244-7005
Fax No.:    (410) 244-8454

*Attorneys for Plaintiff*