IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION

| | | |
|---|---|---|
| DWIGHT D. MITCHELL, individually and on behalf of other similarly situated employees | ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Civil Action No. 8:16-cv-03172 |
| FEDERAL EXPRESS CORPORATION, | ) ) ) | |
| Defendant. | ) | |

**FEDERAL EXPRESS CORPORATION'S
MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS**

Defendant Federal Express Corporation ("FedEx"), pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), requests that this Court dismiss the Complaint of Plaintiff Dwight D. Mitchell ("Plaintiff") in its entirety.

**I.      Introduction and Preliminary Statement**

Plaintiff has filed a claim under the Fair Labor Standards Act ("FLSA") and Maryland wage and hour laws, seeking overtime compensation. The FLSA provides that, for any hours worked in excess of forty hours per week, an employee shall "receive[ ] compensation for his employment ... at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207. Similarly, Maryland law requires "each employer [to] pay an overtime wage of at least 1.5 times the usual hourly wage," computed "on the basis of each hour over 40 hours that an employee works during 1 workweek." Md. Code Ann., Lab. & Empl. § 3-415(a); 3-420(a). Section 216(b) of the FLSA permits employees to bring a cause of action

against employers for violations of these overtime requirements. Maryland law is to the same effect. It states: "If an employer pays an employee less than the wage required under this subtitle, the employee may bring an action against the employer to recover the difference between the wage paid to the employee and the wage required under this subtitle." Md. Code Ann., Lab. & Empl. § 3-427(a) & (d).

There are, however, exemptions to the FLSA overtime provisions. One such exemption provides that the overtime provisions of the FLSA do not apply with respect to "any employee of a carrier by air subject to the provisions of Title II of the Railway Labor Act ("RLA")." 29 U.S.C. § 213(b)(3). The RLA covers "every common carrier by air engaged in interstate or foreign commerce, and every carrier by air transporting mail for or under contract with the United States Government . . . ." 45 U.S.C. § 181. FedEx meets this definition of a covered air carrier, and is therefore exempt from the FLSA overtime requirements. All employees of FedEx are covered by the RLA as well. *Id.* (stating that the RLA applies to "every . . . person who performs any work as an employee . . . of such carrier or carriers . . . ." As a result, Mitchell's FLSA overtime claim (Count I) should be dismissed.

Plaintiff's state law claim should likewise be dismissed as it is preempted by the Airline Deregulation Act ("ADA"). 49 U.S.C. § 41713. ADA preemption applies to "'state enforcement actions having a connection with, or reference to' carrier rates, routes or services . . . even if a state law's effect on rates, routes or services is 'only indirect.'" *Rowe v. N.H. Motor Transp. Ass'n,* 552 U.S. 364, 370 (2008) (alteration added) (quoting *Morales v. TransWorld Airlines, Inc.,* 504 U.S. 374, 384-86 (1992)). Because enforcement of Maryland's overtime requirements would impact FedEx services and pricing, Plaintiff's state law claim is preempted by the ADA. Therefore, Count II of the Complaint should also be dismissed.

## II. Allegations of Complaint Relevant to the Motion to Dismiss[1]

1. FedEx is an international organization operating in the air courier service industry. Doc. 1, Complaint at Intro; ¶ 2.

2. Plaintiff works for FedEx as a senior security specialist. *Id*. at ¶¶ 5-6.

3. Throughout his employment, FedEx has been actively engaged in the management and direction of Plaintiff and other similarly situated employees. *Id*. at ¶ 9. FedEx controls and supervises the work that Plaintiff and other similarly situated employees perform. *Id*. at ¶¶ 10, 13-14.

4. Plaintiff's job description as noted in his initial hiring documentation included the following job responsibilities: (a) conducting investigations into thefts, pilferages, workplace violence, acts of vandalism, misconduct and other activities detrimental to the FedEx brand, its employees and its customers; (b) performing security assessments and producing any corrective action plans required to maintain the security standards; (c) conducting facility and *aircraft ramp inspection as required*; (d) participating in joint sales calls to minimize package loss/theft, proposing solutions and implementing preventive measures; (e) ensuring compliance with regulatory items, documenting and identifying *screening of shipments* and implementing corrective action plans using quality tools as required; and (f) other duties as assigned. *Id.* at ¶ 22 (emphasis added).

5. Plaintiff has performed each of the job duties mentioned above. *Id*. at ¶ 36.

6. Plaintiff's work is directly related to the safe delivery of all products shipped, which is Defendant's primary service to its customers. *Id*. at ¶ 35.

---

[1] FedEx includes these allegations solely for the Court's use in considering this motion to dismiss, without admission as to the truthfulness of any.

7. Since 2008, Plaintiff has been responsible for handling customer complaints and investigating problems with deliveries. *Id.* at ¶ 25.

8. In performing these tasks, Plaintiff alleges that he and other similarly situated employees consistently work up to sixty (60) hours per week. *Id.* at ¶ 49.

9. Plaintiff believes his job responsibilities serve a critical business purpose. *Id.* at ¶ 51.

**III.    Argument**

A motion to dismiss tests the sufficiency of a complaint. *See Butler v. United States,* 702 F.3d 749, 752 (4th Cir. 2012). To survive such a motion, the complaint must contain facts sufficient "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 570 (2007). "Although a motion pursuant to Rule 12(b)(6) invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims set forth therein, dismissal nevertheless is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense." *Brockington v. Boykins,* 637 F.3d 503, 506 (4th Cir. 2011) (internal quotation marks omitted). The United States Supreme Court encourages the bringing of motions to dismiss where it is evident the Complaint is not supported by applicable law. The Court has stated, "When the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Twombly*, 550 U.S. at 558; *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (applying *Twombly* to "all civil actions" including employment cases, and requiring that "only a complaint that states a plausible claim for relief survives a motion to dismiss."). That is exactly the situation presented in this case.

Plaintiff also has the burden of proving that subject matter jurisdiction exists over each

claim in this case. *See Richmond, Fredericksburg & Potomac R. Co. v. United States,* 945 F.2d 765, 768 (4th Cir.1991). "In considering [a challenge to] subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), a court may evaluate the pleadings as evidence on the issue and may consider other evidence in the record "without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indon.,* 370 F.3d 392, 398 (4th Cir.2004) (citation omitted). Jurisdiction over Plaintiff's state law claim is dependent upon whether Congress intended courts to adjudicate actions that would impact the rates, routes, and services of an airline defendant. *Bowles v. Russell*, 551 U.S. 205, 212 (2007) ("Within constitutional bounds, Congress decides what cases the federal courts have jurisdiction to consider."); *Gaines Motor Lines, Inc. v. Klaussner Furniture Industries, Inc.*, 734 F.3d 296, 306 (2013) ("In any preemption analysis, the purpose of Congress is the ultimate touchstone.").

### A. Plaintiff's FLSA Claims

Plaintiff's FLSA claims fail because as a common carrier by air, subject to the provisions of Title II of the Railway Labor Act, FedEx is exempt from the overtime requirements of the FLSA. 29 U.S.C § 213(b)(3).

#### 1. FedEx is an Air Carrier Subject to the RLA.

The National Mediation Board ("NMB") has primary jurisdiction to determine the scope of the RLA. *Thibodeaux v. Executive Jet Intern., Inc.*, 328 F.3d 742, 746, fn. 6 (5th Cir. 2003). Utilizing this authority, the NMB has issued numerous decisions explicitly stating that FedEx is a common carrier by air subject to the RLA. *See, e.g. Federal Express Corporation*, 23 NMB 32 (1995); *Federal Express Corporation*, 20 NMB 404, 409 (May 7, 1993); *Federal Express Corporation*, 20 NMB 7 (1992); *Federal Express Corporation*, 19 NMB 297 (1992). Federal courts around the country agree. *See Federal Express Corp. v. California Public Utilities*

*Comm'n*, 936 F.2d 1075, 1077 (9th Cir. 1991)(finding FedEx is an FAA authorized common air carrier); *Federal Express Corp. v. Teamster Union, Local #85*, 617 F.2d 524, 525 (9th Cir. 1980)(finding that the parties conceded FedEx was covered by the RLA); *Adams v. Federal Express Corp.*, 547 F.2d 319, 320 (6th Cir. 1976)(affirmed dismissal of action filed by union because FedEx "is a common carrier engaged in interstate commerce and subject to the provisions of the Railway Labor Act."); *Chicago Truck Drivers v. National Mediation Board*, 670 F.2d 665, 667 fn. 3 (7th Cir. 1981)("Common carriers by air engaged in interstate or foreign commerce, such as Federal Express, are brought within the RLA definition of 'carrier' by 45 U.S.C. §§ 181-182."). Each of these decisions is in line with the plain language of the statute, which provides that covered entities include "every common carrier by air engaged in interstate or foreign commerce." 45 U.S.C. § 181. Based on this overwhelming weight of authority, there is no real dispute that FedEx is subject to the RLA and therefore exempt from the FLSA overtime requirements.

### 2. All FedEx employees are subject to the RLA, including security specialists.

Courts do not limit the FLSA exemption to employees who operate aircraft, or operate around aircraft. The FLSA exemption covers "***any*** employee of a carrier" regardless of their duties, including those that are primarily ground in nature. 29 U.S.C. § 213(b)(3) (emphasis added). This is again consistent with the RLA's plain language, which includes in the definition of covered employee "every . . . person who performs ***any*** work as an employee . . . of such carrier or carriers . . . ." 45 U.S.C. § 181 (emphasis added). The NMB, which again has primary jurisdiction to determine RLA coverage, has relied upon this language in finding that ***all*** FedEx employees are subject to the RLA. *Federal Express Corporation*, 23 NMB at 73. The Board stated,

> The Railway Labor Act does not limit its coverage to air carrier employees who fly or maintain aircraft. Rather, its coverage extends to virtually ***all employees engaged in performing a service for the carrier so that the carrier may transport passengers or freight.***
>
> * * *
>
> It has been the Board's consistent position that the fact of employment by a "carrier" under the Act is determinative of the status of ***all*** that carrier's employees as subject to the Act. The effort to carve out or to separate [certain employees] would be contrary to and do violence to a long line of decisions by this Board which would embrace the policy of refraining from setting up a multiplicity of crafts or classes.
>
> * * *
>
> The Board need not look further to find that ***all*** of Federal Express' employees are subject to the Railway Labor Act.

*Id*. at 71 (internal citations omitted) (emphasis added).

The only limit on Section 181's coverage is that the carrier must have "continuing authority to supervise and direct the manner of rendition of ... [an employee's] service." 45 U.S.C § 181. Based on the allegations of the Complaint, it is clear FedEx has such authority. Mitchell admits he was employed by and worked for FedEx. *See* Complaint at ¶ 5. He also admits that he was supervised by other FedEx employees. *Id*. at ¶¶ 9-11, 13-14. These allegations are sufficient to show FedEx had continuing authority to supervise and direct Mitchell and all other security specialists. Therefore, the RLA applies.

### 3. The RLA does not have wage and hour provisions.

The RLA does not fix, require or mandate any wage and hour requirements. *See* 45 U.S.C §§ 151-188; *see also Terminal R. Ass'n of St. Louis v. Brotherhood of Railroad Trainmen*, 318 U.S. 1, 6 (1943) ("The Railway Labor Act, like the National Labor Relations Act, does not undertake governmental regulation of wages, hours, or working conditions."). Instead, it seeks to provide a means by which agreement may be reached with respect to them. *Id.* Therefore,

FedEx cannot be held liable for overtime violations because the RLA contains no such provisions.

Because FedEx is subject to the RLA rather than the overtime provisions of the FLSA, Plaintiff cannot state a claim for which relief can be granted under the FLSA, and the FLSA claim must be dismissed.

## B. Plaintiff's Maryland Law Claims are Preempted by the ADA.

### 1. Purpose and Intent of the ADA

The ADA was enacted for the purpose of deregulating the airline industry to promote reliance on competitive market forces and provide efficiency and lower prices. *Morales*, 504 U.S. at 378. It includes a preemption provision, 49 U.S.C.A. § 41713(b)(1), the purpose of which is to prevent the states from regulating the airline industry regarding prices, routes, and services. The act provides, "a State, political subdivision of a State, or political authority of at least 2 states may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart." 49 U.S.C. § 41713(b)(1). The United States Supreme Court has held that Congress' inclusion of the words "related to" expresses a broad preemptive purpose. *Morales*, 504 U.S. at 383. Even general statutes, when particularly applied to the airline industry, are preempted. *Id.* at 386; *Rowe*, 552 U.S. at 370 (ADA preemption applies "even if a state law's effect on rates, routes or services is only indirect."). This includes state wage and hour laws. *See Blackwell v. SkyWest Airlines, Inc.*, No. 06CV0307DMSAJB, 2008 WL 5103195 (S.D. Cal. Dec. 3, 2008) (holding the ADA preempted an employee's wage and hour claim because application of the state law would have prevented airline from providing services during the state's required meal and rest periods).

When Congress deregulated the airline industry by passing the ADA, it retained statutory provisions granting broad discretion to airlines in making safety-related decisions. *Smith v. Comair, Inc.*, 134 F.3d 254, 257 (4th Cir. 1998) (referring to the Air Transportation Safety Act of 1974). Federal statutes recognize safety of passengers and cargo as a specific area of federal concern. *Id*. at 258. Therefore, "[f]ederal law—in conjunction with its broad preemption of state-law claims related to airlines' services—appropriately grants airlines latitude in making decisions necessary to safeguard passengers [and cargo] from potential security threats." *Id*. at 257–58. Utilizing this discretion, FedEx employs security specialists to ensure "the safe delivery of all products shipped, Defendant's primary [service]." Complaint at ¶ 35. In doing so, these security specialists "servic[e] and maintain[] the safety and security needs of employees, customers, and assets [of FedEx]." Complaint at ¶ 24.

### 2. Application of ADA to Plaintiff's Claim Under Maryland Law

Plaintiff's state wage and hour claim in this case is preempted by the ADA because it rests on laws that, if enforced, would have the "impermissible force and effect" of regulating the services of FedEx. Plaintiff admits security specialists are directly involved in ensuring FedEx performs its primary service – the safe delivery of packages. Complaint at ¶¶ 24, 35. In so doing, these employees investigate and implement corrective action plans regarding theft, pilferages, acts of vandalism, and other security policy violations. Complaint at ¶ 22, 24. They also handle customer complaints, investigate problems with deliveries, and screen shipments. Complaint at ¶¶ 22, 25. Plaintiff admits these duties serve a "critical business purpose." Complaint at ¶ 51. Because FedEx operates around the clock, interruption of these necessary activities to accommodate state imposed limitations on hours worked could significantly impact FedEx's service. It is easy to imagine a situation in which a security specialist must, by law, be relieved of

duty, but doing so would delay or impede FedEx's ability to provide safe deliveries. In that situation, the point-to-point transportation of FedEx cargo is impacted.

The Maryland law claim is further preempted by the ADA because enforcement would have an impermissible impact on FedEx's prices. In the interest of public welfare and commerce, courts broadly construe what constitutes an impact on pricing for purposes of ADA preemption. *See generally, Morales,* 504 U.S. at 388 (state law regulating air carrier advertising had "forbidden significant effect" on pricing); *American Airlines, Inc. v. Wolens,* 513 U.S. 219, 228 (1995) (state unfair trade practices act impermissibly related to prices because it would regulate air carrier frequent flyer programs); *Witty v. Delta Air*, 366 F.3d 380, 383-386 (5th Cir.2004) (holding ADA preempted a state law tort claim because enforcement of such claims would result in higher prices, due to air carriers providing greater leg room and less seats per flight). In the Complaint, Plaintiff claims that he and others that are similarly situated worked up to sixty (60) hours per week, or twenty (20) more hours than what is legally permitted under Maryland law absent overtime compensation. Complaint at ¶ 49. Assuming security personnel are non-exempt, to comply with Maryland's wage and hour laws while maintaining its current level of service, FedEx would inevitably incur a substantial increase in labor costs, which would impact pricing when passed on to the consumer. This, again, is the type of substantial impact that Congress prohibited with the passing of the ADA.

Based on the foregoing, Plaintiff's claims are preempted. Enforcing the state law at issue here would have a "forbidden significant effect" on FedEx's services and prices. *Morales*, 504 U.S. at 388. While the state laws and regulations at issue do not directly regulate FedEx's pricing or services, even an indirect impact requires preemption. *See Rowe*, 552 U.S. at 370. That is precisely the situation presented here.

## IV. Conclusion

Plaintiff has failed to state a claim for relief. FedEx is an air carrier covered by the RLA, and it is therefore exempt from the overtime provisions of the FLSA. Moreover, the ADA preempts Plaintiffs' claims, the enforcement of which would impact FedEx's pricing, routes, and services. Therefore, no claim exists and subject matter jurisdiction is lacking. The Complaint should be dismissed.

DATED: December 9, 2016.

Respectfully submitted,

 /s/ Peter Blumberg
Peter Blumberg (#41358)
FEDERAL EXPRESS CORPORATION
3620 Hacks Cross Road
Building B, 3rd Floor
Memphis, Tennessee 38125
Telephone: (901) 434-8489
Facsimile: (901) 434-9279
peter.blumberg@fedex.com

1196967